EDWIN A. LOMBARD, Judge.
bEnmon Enterprises, L.L.C., d/b/a/ Jani-King of New Orleans, appeals to this court a judgment of the trial court denying a writ of mandamus to compel the New Orleans Aviation Board to award it a publicly bid contract to provide janitorial services for the Louis Armstrong New Orleans International Airport. For the following reasons, we affirm.

Factual and Procedural History

This matter concerns the bidding process for an “Airport Facilities Janitorial Services Contract” for the Louis Armstrong New Orleans International Airport, in which the successful bidder would provide services, labor, and materials for complete janitorial and maintenance of the numerous airport facilities, including but not limited to, all terminals, parking lots, and office buildings. The awarding of public bid contracts concerning improvements, betterments, maintenance, and operations of the airport are conducted by the New Orleans Aviation Board (NOAB). La.Rev. Stat. 2:351.
In November 2008, the NOAB began advertising for bids for the janitorial services contract. On January 6, 2009, the NOAB opened bidding for a five-year contract for janitorial services which included a three-year base bid and two one-tyear2 optional years. The NOAB provided pro *550 spective bidders with the advertisement for bids and multiple bidding documents. Included with the numerous bidding documents were addenda forms concerning necessary compliance with the State and Local Disadvantaged Business Enterprise (SLDBE), in which a certain percentage of the subcontract work must be performed by businesses with social or economic disadvantages.
The bid documents contained a “Notice to Bidders” page which contained the following relevant language:

BEFORE SIGNING AND SUBMITTING THIS BID PLEASE TAKE NOTE OF THE FOLLOWING. FAILURE TO PERFORM ANY ONE OF THESE ACTIONS SHALL CAUSE YOUR BID TO BE REJECTED.

... 4. MISTAKE IN BID: Bidder is responsible to review the Bid price for possible errors in calculation or Work erroneously omitted.
The NOAB received nine bids for the airport janitorial services contract, and opened the bids on January 13, 2009 after a one week extension. The NOAB retained the services of TMG Consulting, a planning and economics consulting firm, to evaluate the bids received and make suggestions as to responsiveness and quality of the bid submissions. TMG’s bid analysis report of January 28, 2009 stated that significant “responsiveness issues” by all of the bidders included failure to comply with (1) the SLDBE form requirements, and (2) calculation errors in bid amounts. TMG concluded that six of the nine bids received could be immediately determined to be “non-responsive.” One of these six was A.M.E. Services, Inc., whose bid failed to meet SLDBE form requirements.
The TMG report on the bid submitted by Enmon Enterprises (hereafter “Jani-King”) noted that their bid listed a subcontractor that was not a certified I «SLDBE registrant at the time of submission. It noted that “NOAB staff provided Jani-King notice of this situation and allowed them 12 calendar days to submit a qualified substitution.” The report further noted that Jani-King’s bid contained “a few Extension Errors and two Rounding Errors.” The report stated that “[i]f all arithmetic issues are corrected using the Unit Bid Prices, this bid is $0.29 more than the Total Bid Amount submitted.”
The two other bids considered somewhat responsive were submitted by ISS Facility Services and ABM Janitorial Services. The ISS Facility Services bid met the SLDBE percentage requirements, but contained “a few Extension Errors, one Summation Error in Item R-8, and one Rounding Error in the Bid Proposal amount ... If all arithmetic errors are corrected using the Unit Bid Prices, this bid is $4,556.70 less than the Total Bid Amount submitted.” The ABM Janitorial bid “contained some Extension Errors and one Rounding Error ... as discussed in Responsiveness Issue # 2. If all arithmetic issues are corrected using the Unit Bid Prices, this bid is $42.28 less than the Total Bid Amount submitted.” All nine of the bids submitted contained errors concerning either SLDBE form errors or calculation errors.
Of the three bids deemed conditionally responsive by the TMG report, Jani-King’s bid was the lowest. On February 26, 2009, the NOAB obtained a thirty day extension with Jani-King pursuant to La. Rev.Stat. 38:2215. At a March 18, 2009 public meeting of the NOAB, the board elected to reject all bids and re-advertise the janitorial services contract. Andree Cohen, The City of New Orleans’ Purchasing Administrator, wrote letters to all bidders, stating that “[mjany of the bidders ... struggled with two items — interpretation of the requirements for calculating the *551 percentage of SLDBE participation and unit price extension ^calculations.” In the NOAB’s letter to Jani-King, Ms. Cohen stated that “[s]pecifically, the decision to reject Jani-King of New Orleans’ bid was based upon the following: a. a few unit price extension errors and one rounding error on the bid schedule.”
On December 10, 2009, Jani-King filed a Petition for Writ of Mandamus against the NOAB and A.M.E. Services, asking the district court to compel the award of the Janitorial Services Contract to it. Jani-King claimed in the petition that the NOAB’s decision to reject all bids was arbitrary and capricious, and that the NOAB had no just cause to reject then-bid.
A full bench trial on the merits occurred on March 23, 2010. The first testifying witness was Mr. Dwight Norton of TMG Consulting, who testified with intricate detail concerning the bidding process, the making of SLDBE forms, and the calculations done in analyzing the bids. He testified that eight of the nine bidders had extension errors or calculation errors. John O’Neil, a Jani-King executive, provided testimony concerning filling out the unit price forms and accounting for insurance and bonding. Further testimony revealed the confusing and complex nature of the bid documents concerning the SLDBE requirements, bonding, and unit price directions. Following testimony and closing arguments, the trial court ruled against Jani-King, and gave reasons for denying mandamus relief in pertinent part:
THE COURT: I wanted the record to be clear about that. The Broadmoor, Hamp’s, Roof Technology line of cases have made it I think certain things very clear: there was a time when public agencies could exercise their discretion in what was significant and what was not, and the words used by the courts were substantial or insubstantial. On each occasion previous to this line of cases where the courts, I think it was in the Sullivan decision, where the courts said that’s not substantial. The |,legislature came in and said we’re not going to let you do that, courts. We want to get a bright line rule ...
[T]he legislature consistently overturned the courts with legislation to make this area of law more strict, more strident and more dark lined. It’s not a legal word but to be more clear about what we can allow and not allow as a waiver.
I appreciate that the mover in this action, the bid was rejected primarily on this number discrepancy issue. I wonder if that were the only issue before the Court whether that would be if 16 cents, if we called it that, or one cent would really be the kind of thing either the court or legislature were talking about, and I would hope indeed it would not be.
The bigger problem this Court has with these documents is that at some point when big documents are so confusing that really smart, sophisticated companies can’t get it right, how does that really allow for public bid? ...
... The question before the Court I think fundamentally is whether or not there was just cause to reject all bids. I want to address the DBE question. It is almost impossible to figure out the 30 percent DBE requirement when you’re trying to figure out whether the DBE requirement is based on the base bid amount or the bid amount plus insurance plus bonding ...
I find that there was just cause to throw out these bids however distasteful that finding is to the amount of that they’ve put into this process by really good people and I’m denying the Writ of Mandamus.
*552 Jani-King timely filed a motion for new trial. Judge Madeleine Landrieu, the trial judge, recused herself from the case once her brother had been sworn in as the mayor of New Orleans. The matter was reassigned to Judge Michael Bagneris, who denied Jam-King’s motion for new trial. Jani-King then timely appealed to this Court.

Assignments of Error

Jani-King asks this Court to compel the NOAB to award the janitorial services contract to it. Jani-King argues that the trial court erred in denying its ^petition for mandamus because it was the lowest responsible bidder and submitted the lowest responsive bid. Appellant further argues that there was no just cause to reject all bids and no just cause to reject its bid.
Jani-King contends that the district court erred in refusing to award the contract to it when the NOAB entered into an agreement to extend the award date pursuant to La.Rev.Stat. 38:2215(A). Appellant argues that the time period in which the NOAB could have rejected all bids had expired, and that the contract must be award to Jani-King as the lowest responsible bidder.
The NOAB argues that, in analyzing Louisiana’s Public Bid Law as a whole, merely obtaining an extension of time to make a bid decision with Jani-King does not require it to award the contract to appellant. Secondly, the NOAB denies that Jani-King’s bid was responsive under the Public Bid Law. A.M.E. Services also submitted a brief as appellee, and argues that Jani-King was not the lowest responsive bidder, and that even if it was, Jani-King is not entitled to mandamus relief and award of the contract.

Appellate Standard of Review, Mandamus Relief

This litigation is governed by Louisiana’s Public Bid Law, La. Rev. Stats. 38:2212, et seq., a law which “was enacted with in the interest of the taxpaying citizens and has for its purpose their protection against contracts of public officials entered into because of favoritism and involving exorbitant and extortionate prices.” Haughton Elevator Div. v. State, Div. of Admin., 367 So.2d 1161, 1164 (La. 1979). On review of a state agency or political subdivision’s exercise of discretion determining whether a bidder is the lowest responsible bidder, a court should not substitute its judgment for the good faith judgment of an administrative agency. Lemoine/Brasfteld & Gorrie Joint Venture, LLC v. Orleans Parish Criminal Sheriff’s Office, 2010-1220, p. 3 (La.App. 4 Cir. 3/30/11), 63 So.3d 1068, 1070-1071.
A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. La.Code Civ. Proc. art. 3862. A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law. La.Code Civ. Proc. art. 3863. An appellate court will grant a writ of mandamus only when there is a usurpation of judicial power or clear abuse of discretion. Wallace C. Drennan, Inc. v. Sewerage & Water Board of New Orleans, 2000-1146, pp. 3-4 (La.App. 4 Cir. 10/3/01), 798 So.2d 1167,1171.
Mandamus is an extraordinary remedy that is to be used sparingly to compel the performance of a ministerial duty that is clearly required by law. Id., p. 11, 798 So.2d at 1175. A writ of mandamus may not be issued to compel a public official to exercise discretionary authority. Id., p. 11, 798 So.2d at 1175-1176. Nevertheless, Louisiana’s jurisprudence has shown that in the realm of public bid law, mandamus has been an appropriate remedy to award *553 publicly bid contracts when the law requires. See New Orleans Rosenbush Claims Service, Inc. v. City of New Orleans, 94-2228 (La.4/10/95), 658 So.2d 538; see also Concrete Busters of Louisiana, Inc. v. Board of Commissioners of Port of New Orleans, 2010-1172 (La.App. 4 Cir. 2/2/11), 69 So.3d 484.

Law and Discussion

In the matter sub judice, because the New Orleans Aviation Board had just cause to reject all bids received for the Janitorial Services Contract, we find no error in the decision of the trial court to deny Jani-King’s petition for writ of mandamus. The trial court’s judgment is affirmed.
| sLouisiana’s Public Bid Law provides that all public work contracts “shall be advertised and let by contract to the lowest responsible bidder who had bid according to the contract, plans, and specifications as advertised.” La.Rev.Stat. 38:2212(A)(l)(a). A “responsible bidder” is defined as:
a contractor or subcontractor who has an established business and who has demonstrated the capability to provide goods and services in accordance with the terms of the contract, plan, and specifications without excessive delays, extensions, cost overruns, or changes for which the contractor or subcontractor was held to be responsible, and who does not have a documented record of past projects resulting in arbitration or litigation in which such contractor or subcontractor was found to be at fault. La.Rev.Stat. 38:2216(C)(2)(a).
Since the first passage of the Public Bid Law, the Louisiana Legislature has made numerous amendments to greatly narrow the ability of a public entity to waive aspects of the law or the bidding documents themselves as mere formalities or errors of form. The ability of the public entity to waive such failures in submitted bids was further restricted in Acts 2001, No. 1106 § 1, to provide that “[t]he provisions and requirements of this Section, those stated in the advertisement for bids, and those required on the bid form shall not be waived by any entity.” La.Rev.Stat. 38:2212(A)(b)(i). The Louisiana Supreme Court has fully recognized these severe restrictions on public bidding waivers, and in Broadmoor L.L.C. v. Ernest N. Mortal New Orleans Exhibition Hall Authority, 2004-0211, 2004-0212, p. 8 (La.3/18/04), 867 So.2d 651, 657, the Court held:
[I]n enacting the most recent amendments, the legislature has made it clear that the requirements contained “in the advertisement for bids and those required on the bid form” are not waivable ... when the legislature added subsection (b) to LSA-R.S. 38:2212(A)(1), we presume that the legislature intended to change the law. As it stands now, the Authority cannot waive any requirements contained in its bid requirements. The language of LSA-R.S. 38:2212(A)(l)(b) is clear and unambiguous: when a public entity elects to place certain ^requirements in it advertisements for bids and on its bid forms, that entity is bound by those requirements and may not choose to waive them at a later date.
The Supreme Court in Hamp’s Construction, L.L.C. v. City of New Orleans, 2005-0489, p. 9 (La.2/22/06), 924 So.2d 104, 110, reaffirmed its decision in Broadmoor:
There is nothing ambiguous about La. R.S. 38:2212(A)(b): the requirements of the Public Bid Law, the advertisements for bids and the bid form shall not be waived by any public entity. The legislature changed the wording of this statute several times in an attempt to change the law, and to make clear that the requirements of the advertisement *554 for bids and the bid form, as well as the Public Bid Law, shall not be waived. The most recent amendment to the statute serves to emphasize that these requirements cannot be waived under any circumstances, regardless of whether they could be considered as informalities.
This strict prohibition of waiver or deviation from bid forms and statutory law must also be weighed with the statutory requirement that a public entity must have “just cause” to reject any bid or reject all bids. La.Rev.Stat. 38:2214(B) provides:
§ 2214.. Designation of time and place for opening bids; right to reject bids ... B. The public entity may reject any and all bids for just cause. Just cause for the purpose of the construction of public works is defined, but is not limited to the following circumstances:
(1) The public entity’s unavailability of funds sufficient for the construction of the proposed public work.
(2) The failure of any bidder to submit a bid within an established threshold of the preconstruction estimates for that public work, as part of the bid specifications.
(3) A substantial change by the public entity prior to the award in the scope or design of the proposed public work.
110(4) A determination by the public entity not to build the proposed public work within twelve months of the date for the public opening and reading of bids.
(5) The disqualification by the public entity of all bidders, (emphasis added).
In this matter, we find that the NOAB had just cause to reject all bids, including Jani-King’s proposal. Jani-King’s bid handlers did not handwrite or otherwise correct its price errors. The testimony at trial revealed that Jani-King’s personnel made errors very similar to that of other bidders’ whose bids were also rejected, i.e. annual bid price calculations and other rounding errors. The only difference between Jani-King’s errors and the other bidders’ extension and bid price errors was the size of the error, i.e. the dollar amount. However, having the least incorrect of all the incorrect bids does not entitle Jani-King to mandamus relief. The Louisiana Supreme Court, in Broadmoor and Hamp’s, supra, have made it clear that a public entity cannot deviate in any manner from the requirements it sets forth in its bid documents and the requirements set forth in any aspect of the Public Bid Law. La.Rev.Stat. 38:2212(A)(b)(i).
In this matter, some bids were considered unresponsive to the bid documents in the NOAB’s first analysis via the TMG report. Further analysis by the NOAB revealed that all of the bids contained either errors in meeting SLDBE form and percentage requirements, errors in bid price calculation, or both. These errors may have been primarily the result of confusing bid documents, complex instructions, or other “moving targets” created by the NOAB, but a public entity may not waive (1) any requirements of Public Bid Law, (2) any requirements stated in the advertisement for bid, or (3) any requirements stated on the bid form. Hamp’s Constr., L.L.C., supra, pp. 9-11, 924 So.2d at 110-111. Therefore, we find that the InNOAB had just cause to reject the Jani-King bid and all bids. La.Rev.Stat. 38:2214(B)(5).
Jani-King next argues that because the NOAB asked it to sign a mutual agreement to extend the deadline for awarding the bid, Jani-King is entitled to mandamus relief and award of the contract. The Public Bid Law, in La.Rev.Stat. 38:2215(A), sets a time period for holding *555 bids and obtaining an extension of this time period:
§ 2215. Time period for holding bids; issuance of work orders to commence work; exceptions
The state or any state agency upon receipt of bids for the undertaking of any public works contract shall act -within thirty calendar days of such receipt award said contract to the lowest responsible bidder or reject all bids. A political subdivision upon receipt of bids for the undertaking of any public works contract shall act within forty-five calendar days of such receipt to award said contract to the lowest responsible bidder or reject all bids. However, the public entity and the lowest responsible bidder, by mutually written consent, may agree to extend the deadline for award by one or more extensions of thirty calendar days, (emphasis added).
In New Orleans Rosenbush Claims Service, Inc. v. City of New Orleans, 94-2228 (La.4/10/95), 658 So.2d 538, 546, the Louisiana Supreme Court, in evaluating the 38:2214 “just cause” statute and the 38:2215 extension statute in whole, held that a public entity must do one of the following within the set time period[1]: (1) award a contract to the lowest responsible bidder; (2) reject all bids; or (3) extend the deadline by mutual consent with the lowest responsible bidder. In the Rosen-bush case, the defendant city did none of these, and the Court therefore compelled mandamus relief and award of the contract. Id. In the matter sub judice, |12the NOAB did act in one of these three ways: it obtained an extension with Jani-King.
Before the initial forty-five days expired, the NOAB obtained an extension of thirty days to further analyze the bids. By this time, February 26, 2009, none of the bidders had been formally rejected. Before this thirty-day extension expired, the NOAB had timely rejected all bids for just cause. The NOAB wrote to all bidders and provided its reasons for rejecting all bids and each bid specifically.
This Court can find no support for the argument that obtaining an extension with Jani-King equates to automatic acceptance of their bid. The various statutes of the Public Bid Law must be read in conjunction: being the numerically lowest “responsible bidder” does automatically make that bidder the “lowest responsible bidder who had bid according to the contract, plans, and specifications as advertised.” La.Rev.Stat. 38:2212(A)(l)(a) (emphasis added). The extension, as the title of the statute indicates, is merely an extension for holding bids. La.Rev.Stat. 38:2215. It is not a mechanism for the apparent lowest bidder to reserve and later demand an award of contract. Therefore, Jam-King’s argument as to the extension is without merit.

Conclusion

In this matter, the trial court found that the complex and confusing nature of the NOAB’s bid documents may have played a large role in causing the rejection of all bids, and we agree. However, none of the bids received fully complied with the specifications of the contract and bid documents. Granting mandamus relief to perhaps the least incorrect bid would contradict the legislature’s clear intention that *556 11sthere can be no waiver or deviation from the advertisement requirements, bid form requirements, and Louisiana Public Bid Law statutes. “The Public Bid Law could not be more clear in stating that a bidder’s failure to comply with every detail can invalidate the bid. The consequences of such defects should be on the bidder who prepares the bid.” Broadmoor, supra, p. 9, 867 So.2d at 658. In this matter, none of the bids were in accordance with the contract, plans, and specifications as advertised. La.Rev.Stat. 38:2212(A)(l)(a). Because the NOAB had just cause to reject all bids, we decline to address the arguments of A.M.E. Services as to which party was the lowest responsible bidder.
We find no error in the trial court’s denial of mandamus relief. Consequently, we find no abuse of discretion in the denial of Jani-King’s motion for new trial. Ferguson v. Sugar, 2005-0921, p. 23 (La.App. 4 Cir. 6/25/08), 988 So.2d 816, 831.

Decree

The judgment of the trial court denying mandamus relief to Enmon Enterprises, L.L.C. is affirmed.
AFFIRMED
TOBIAS, J., concurs and assigns errors.

. At the time of the New Orleans Rosenbush decision, La.Rev.Stat. 38:2215 required a "political entity” to act within 30 days to award the contract to the lowest responsible bidder or reject all bids. The current version of the statute allows for 45 days if the bidding entity is a political subdivision such as the NOAB, and mutually agreed to extensions of 30 days. La.Rev.Stat. 38:2215.